## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO. 5:23-CV-00040-KDB-SCR

| | |
|---|---|
| **LEWIS CHAPMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CITY OF NEWTON, et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on "Defendants' Motion for Judgment on the Pleadings" (Doc. No. 9) and the parties' briefs and exhibits. (Doc. Nos. 10, 12 & 13).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion be <u>granted in part</u> and <u>denied in part</u> as discussed below.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Considering the pleadings (Compl., Doc. No. 1-1 & Answer, Doc. No. 5) and accepting the facts alleged in the Complaint as true, Plaintiff Lewis E. Chapman was employed by Defendant City of Newton Fire Department as a firefighter from 1999 until June 23, 2022.  (Compl. ¶ 9; Answer ¶ 9).  Defendant Kevin Yoder is the Fire Chief.  (Compl. ¶ 6; Answer ¶ 6).  Plaintiff was

employed as an Engineer and then a Captain until the end of his employment. (Compl. ¶ 9; Answer ¶ 9). He also held a fill-in position for which he received additional compensation. (Compl. ¶ 13).

At the time of the actions alleged in the Complaint, Plaintiff was 50 years old. Id. ¶ 3. Plaintiff suffered from a disability beginning when he injured his back in February 2022, and this impairment substantially limited one or more major life activities. Id. ¶¶ 11, 36.

Plaintiff went on leave under the Family Medical Leave Act ("FMLA") for ten weeks for the disability, ending on April 30, 2022. Id. ¶ 12. During this leave, Plaintiff underwent extensive physical therapy and was released by his physician for light physical duty. Id. ¶ 15.

When he returned to work, Defendants claimed they could not accommodate Plaintiff with any work appropriate for those restrictions. Id. ¶ 15. Instead, Defendants demanded that Plaintiff attend the OSFM NC Breathing Equipment School class for advance rescue team training, which was a training that would be difficult and dangerous for Plaintiff given his condition and limitations. Id. ¶¶ 16-17. The breathing class was so demanding that its success was judged by the number of students who dropped out. Id. ¶ 17.

Plaintiff "reported his grievances" concerning both the Breathing School class and violations of the North Carolina Wage and Hour Act to Defendants' Human Resources Department. Id. ¶ 22. Concerning the latter, Plaintiff complained about unpaid wages and benefits. Id. ¶¶ 51, 54.

Furthermore, Chief Yoder mocked Plaintiff's disability, told others that Plaintiff was faking his injury, and dismissed its seriousness by joking about whether Plaintiff thought the doctor could just "wave a magic wand and he would be miraculously healed." Id. ¶ 18.

Chief Yoder told Plaintiff and others of his plan to specifically harm Plaintiff by removing him from the fill-in position. Id. ¶ 56. Other supervisory employees were aware of Chief Yoder's

remarks, but failed to take any responsive corrective action.  Id. ¶ 14.  Chief Yoder followed through on his threat and terminated Plaintiff from the fill-in position on May 21, 2022, only twenty-two days after Plaintiff's return from FMLA leave.  Id. ¶ 20.

Between April 30, 2022, and June 23, 2022, Chief Yoder fabricated two written complaints against Plaintiff and called him into the office five times on the pretense of unsubstantiated and frivolous disciplinary actions in retaliation for Plaintiff complaining about his discriminatory treatment.  Id. ¶¶ 19, 39.

Defendants discriminated against Plaintiff by giving extensions to other employees to complete their work while giving Plaintiff extra burdensome tasks to complete.  Id. ¶ 56.  Chief Yoder changed the leave policy specifically to target Plaintiff in spite of Plaintiff's seniority.  Id. Chief Yoder defamed Plaintiff by misrepresenting that he was responsible for other employees leaving the fire department.  Id. ¶ 59.  Chief Yoder further targeted Plaintiff by changing the vacation policy to erase Plaintiff's ninety-six hours of accumulated leave.  Id. ¶ 21.  Defendants admit that Chief Yoder changed that policy after Plaintiff had already accumulated those hours. (Answer ¶ 21).

Plaintiff complained to Defendants' Human Resources Department.  (Compl. ¶ 22). When Plaintiff made known his intent to make a formal complaint against Chief Yoder for his discriminatory and retaliatory actions, Chief Yoder deprived Plaintiff of access to a complaint form to do so.  Id. ¶ 56.  Chief Yoder violated department policy by discussing the fabricated disciplinary actions against Plaintiff with individuals outside Plaintiff's chain of command.  Id.

As a result of this mistreatment, Plaintiff was forced to resign.  Id. ¶ 39.

At the time his employment with Defendants ended on June 23, 2022, Plaintiff had accumulated over 2,500 hours of sick leave for which he is still entitled to compensation. Id. ¶¶ 9, 42-43.

Plaintiff alleges that the actions of Defendants were targeted at Plaintiff, retaliatory, and discriminatory on several alternative theories of liability. Plaintiff also alleges the actions of Chief Yoder were done willfully and wantonly, and as part of a pattern and practice of intentional disregard for the continued safety and rights of the City's employees and the general public (Id. ¶¶ 68-69) and as part of a retaliatory scheme against Plaintiff. Id. ¶ 56.

On January 25, 2023, Plaintiff filed this action in Catawba County Superior Court alleging eight claims for: (1) declaratory relief for compensatory damages under FMLA, 29 U.S.C. § 2601, et. seq.; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq.; (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq.; (4) violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et. seq.; (5) wrongful discharge in violation of North Carolina public policy; (6) retaliation in violation of the ADEA and the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95–241 et seq.; (7) common law defamation; and (8) punitive damages. (Doc. No. 1-1). Each claim is plead as to all Defendants except for the defamation claim, which is pled only as to Defendant Yoder. Id. ¶¶ 59, 62-63.

On March 17, 2023, Defendants removed the state court action to the United States District Court for the Western District of North Carolina. (Doc. No. 1). Defendants assert the existence of federal question subject matter jurisdiction, which has not been challenged and appears proper. Id. at 2.

On April 14, 2023, Defendants filed their Answer. (Doc. No. 5).

On June 30, 2023, Defendants filed their Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings on each of Plaintiff's claims pled against Defendant City except for the retaliation claims under REDA and ADEA. (Doc. No. 9 at 1; Doc. No. 10 at 18 ("Defendants are not seeking to dismiss Plaintiff's Retaliation claim in violation of REDA and the ADEA")). Defendants also move to dismiss all claims as to Defendant City of Newton Fire Department and Defendant Yoder. (Doc. No. 9 at 1).

In his opposition brief, Plaintiff:

> stipulates that the claims against the City of Newton Fire Department and Kevin Yoder in his official capacity should be dismissed for the reasons stated in Defendants' Brief to the extent that the claims against those entities are redundant to those against the City of Newton and Kevin Yoder in his individual capacity.

(Doc. No. 12 at 3-4). As Defendants point out in their Reply, Plaintiff has not responded to their arguments for dismissal of his NCWHA Claim. (Doc. No. 10 at 16-17; Doc. No. 13 at 5).[1]

## II.    DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). A motion for judgment on the pleadings is determined under the same standards applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In re Lowe's Cos., Inc. Fair Lab. Standards Act & Wage & Hour Litig., 517 F. Supp. 3d 484, 493 (W.D.N.C. 2021) (citing Burbach Broad, Co. of Del. v. Elkins Radio, 278 F.3d 401,

---

[1]Defendants mistakenly assert that Plaintiff failed to respond to their argument that governmental immunity bars his public policy wrongful discharge claim. To the contrary, Plaintiff has opposed dismissal of that claim as well as opposed Defendants' claims of governmental, sovereign and public official immunity. (Doc. No. 12 at 9-11).

405 (4th Cir. 2002) and <u>Shipp v. Goldade</u>, No. 5:19-CV-00085-KDB-DCK, 2020 WL 1429248, at *1 (W.D.N.C. Mar. 19, 2020)).

"A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." <u>Greene v. Town of Lilesville</u>, No. 3:17-CV-00638-RJC-WCM, 2023 WL 5603191, at *4 (W.D.N.C. Aug. 7, 2023) (quoting <u>Drager v. PLIVA USA, Inc.</u>, 741 F.3d 470, 474 (4th Cir. 2014)), <u>report and recommendation adopted</u>, No. 3:17-CV-00638-RJC-WCM, 2023 WL 5604133 (W.D.N.C. Aug. 29, 2023).

In that regard, courts "are required to accept all well-pleaded allegations of [the] complaint as true and draw all reasonable factual inferences in [the plaintiff's] favor." <u>Id.</u> at *5 (quoting <u>Massey v. Ojaniit</u>, 759 F.3d 343, 353 (4th Cir. 2014)). The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." <u>Id.</u> (quoting <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009))).

However, courts may consider the complaint, answer, and any materials attached to those pleadings in evaluating a motion for judgment on the pleadings "so long as they are integral to the complaint and authentic." <u>Philips v. Pitt Cty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009); <u>see also</u> Fed. R. Civ. P. 10(c) ("[A]n exhibit to a pleading is part of the pleading for all purposes."); <u>see also</u> <u>Greene</u>, 2023 WL 5603191, at *5.

**B.  <u>Claims Against Defendant Fire Department and Defendant Yoder in His Official Capacity</u>**

As Plaintiff has stipulated, (Doc. No. 12 at 3-4), his claims against the City of Newton Fire Department and Defendant Yoder in his official capacity are redundant of his claims against Defendant City. <u>See</u> <u>Armstrong v. City of Greensboro</u>, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016)

6

("[D]uplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed"); Moore v. City of Asheville, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003) (dismissing Asheville Police Department because it "is not a 'person' and, therefore, lacks the capacity to be sued"); Atkins v. City of Charlotte, 296 F. Supp. 1068, 1071 (W.D.N.C. 1969) (recognizing that "the City of Charlotte is a municipal corporation which operates and maintains the Charlotte Fire Department . . . [t]he Chief of the Department is appointed by the City Council and is accountable to the Council.").

For those reasons, the undersigned respectfully recommends that Defendants' Motion for Judgment on the Pleadings be granted as to Defendant City of Newton Fire Department and Defendant Kevin Yoder in his official capacity.

### C. NCWHA Claim

As noted above, Plaintiff has not opposed Defendants' Motion against his NCWHA claim. "The Fourth Circuit has made clear that a party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue." Bigelow Corp. v. Hounds Town USA, LLC, No. 323CV00134-FDW-SCR, 2023 WL 4939386, at *3 (W.D.N.C. Aug. 2, 2023) (quoting Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017)).

> Overburdened trial judges cannot be expected to be mind readers. . . . In opposing a Rule 12(b)(6) motion, a plaintiff cannot expect a trial court to do his homework for him. Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim.

Id. at *3 (quoting McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22–23 (1st Cir. 1991)) (internal citations omitted). Where a party fails to do so, "[n]o amount of interpretive liberality can save chestnuts so poorly protected from the hot fire of dismissal." McCoy, 950 F.2d at 23. Accordingly in Bigelow Corp., this Court treated "[defendant's] arguments that [p]laintiffs left unaddressed as uncontested." Id. (citing City of Brevard v. CDM Smith, Inc., No. 1:20-cv-160-MR-WCM, 2021

WL 1015858, at *6 (W.D.N.C. Feb. 2, 2021) (collecting cases holding that when a plaintiff's failure to respond to a motion to dismiss argument, courts may assume they concede the merits of that argument).

"However, even where a motion to dismiss goes unchallenged, 'the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.'" Bigelow Corp., 2023 WL 4939386, at *4 (quoting Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014)).

Accordingly, the Court has reviewed the record and agrees that Defendant City is exempt from the NCWHA except for situations listed in N.C. Gen. Stat. § 95-25.14(d), of which none are at issue here. Nor has Plaintiff specifically alleged that Defendant Yoder is an employer. Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016).

For those reasons, the undersigned respectfully recommends that Defendants' Motion for Judgment on the Pleadings be granted as to Plaintiff's NCWHA claim.

**D. Claims Against Defendant Yoder in His Individual Capacity**

**1. Defendant Yoder is not the Employer**

Because Defendant Yoder was Plaintiff's supervisor, but not his employer, his ADEA, ADA, REDA, and wrongful discharge claims against Defendant Yoder also fail. See Lissau v. S. Food Svc., Inc., 159 F.3d 177, 180 (4th Cir. 1998) (holding that the plaintiff's supervisor, who plaintiff alleged was an "agent" of the employer, was not liable because an "analysis of Title VII's language and its remedial scheme leads us to join the other circuit courts and conclude that supervisors are not liable in their individual capacities for Title VII violations"); Baird ex rel. Baird v. Rose, 193 F.3d 462, 472 (4th Cir. 1999) ("Because Title VII does not authorize a remedy against individuals for violations of its provisions, and because Congress has made the remedies available

8

in Title VII actions applicable to ADA actions, the ADA does not permit an action against individual defendants . . . for conduct protected by the ADA"); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994) (same result for ADEA); Iglesias v. Wolford, 667 F. Supp. 2d 573, 590 (E.D.N.C. 2009), aff'd, 400 F. App'x 793 (4th Cir. 2010) ("Under North Carolina law, a plaintiff may only bring a wrongful-discharge action against the plaintiff's employer, not against the employer's agents." (citations omitted)); Earls v. Forga Contracting, Inc., No. 1:19-cv-00190-MR-WCM, 2020 WL 1516813, at *6 (W.D.N.C. Mar. 3, 2020) (noting because there was no North Carolina appellate authority compelling a different result, Court declined to extend liability under REDA to plaintiff's supervisor and dismissed him as a defendant), appeal dismissed, 2022 WL 1183568 (4th Cir. Feb. 1, 2022).

For those reasons, the undersigned respectfully recommends that Defendants' Motion for Judgment on the Pleadings be granted as to Plaintiff's ADEA, ADA, REDA and wrongful discharge claims pled against Defendant Yoder in his individual capacity.[2]

### 2. Defamation Claim

"The elements of defamation are well known: there must be (1) a publication that is both (2) defamatory and (3) false." Clark v. O'Rourke, No. 3:10-CV-527-RJC-DCK, 2011 WL 1400429, at *6 (W.D.N.C. Feb. 22, 2011) (quoting Suarez v. Charlotte–Mecklenburg Schs., 123

---

[2] Defendants also argue that Defendant Yoder cannot be individually liable on Plaintiff's FMLA claim. However, case law is unclear as to whether the FMLA claim is barred in the same fashion as the other federal claims. See Jones v. Sternheimer, 387 F. App'x 366, 369 (4th Cir. 2010) ("[T]he fact that supervisory liability under the FMLA is an open question in this circuit necessarily renders the district court's frivolity dismissal in error."); Woods v. S. C. Dep't of Health & Hum. Servs., No. 318CV00834-MGL-KDW, 2019 WL 1995136, at *3 (D.S.C. Apr. 18, 2019) (citing Jones for same proposition but dismissing FMLA claims against state employees on Eleventh Amendment immunity), report and recommendation adopted, No. 3:18-CV-00834-MGL, 2019 WL 1995511 (D.S.C. May 6, 2019), appeal dismissed and remanded, 777 F. App'x 703 (4th Cir. 2019). Defendants have not argued Eleventh Amendment immunity which in any event "provides states immunity from suits for damages brought in federal court, [but] does not extend to municipalities or their officials." Scarborough v. Daniel, No. 5:23-CV-00008, 2023 WL 5236770, at *5 (W.D. Va. Aug. 11, 2023) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.4, 694 (1978) and Bland v. Roberts, 730 F.3d 368, 389-90 (4th Cir. 2013)). The undersigned need not resolve this issue now because the FMLA claim otherwise fails for the reasons stated in II(E).

F. Supp. 2d 883, 892 (W.D.N.C.2000)), report and recommendation adopted, No. 3:10-CV-527 RJC-DCK, 2011 WL 1399803 (W.D.N.C. Apr. 13, 2011); see also Marom v. Town of Greenburgh, No. 5:18-CV-26-FL, 2018 WL 3999819, at *1 (E.D.N.C. Aug. 20, 2018) ("In order to recover for defamation in North Carolina, a plaintiff must show that the defendant (1) made false, defamatory statements of or concerning the plaintiff, which were (2) published to a third person, (3) causing injury to the plaintiff's reputation" (quoting Lanier Const. Co., Inc. v. City of Clinton, 812 F. Supp. 2d 696, 700 (E.D.N.C. 2011))).

As to this cause of action, Defendant Yoder argues that he is entitled to public official immunity. (Doc. No. 10 at 8-9; Doc. No. 13 at 3-4). Public official immunity "precludes suit against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" R.A. v. Johnson, 36 F.4th 537, 542 (4th. Cir. 2022) (quoting Hart v. Brienza, 784 S.E.2d 211, 215 (N.C. Ct. App. 2016)); see also Mitchell, 796 S.E.2d at 82 (quoting Fullwood v. Barnes, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016)). Public official immunity has been recognized by North Carolina for over a century. Epps v. Duke Univ., Inc., 468 S.E.2d 846, 850 (N.C. Ct. App. 1996).

Under North Carolina law, a "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 321 S.E.2d 888, 890 (N.C. 1984). "Thus elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Wilcox v. City of Asheville, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012). The third element, intent to injure, "can either be 'actual' or 'constructive.'" Knibbs

10

v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022) (quoting Wilcox, 730 S.E.2d at 231). However, "a showing of mere reckless indifference is insufficient" to show a constructive intent to injure. Wilcox, 730 S.E.2d at 232; see also Schlossberg v. Goins, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000) ("A plaintiff may not satisfy [showing malice or corruption] through allegations of mere reckless indifference."). Rather, "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' so evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'" Knibbs, 30 F.4th at 227 (quoting Doe v. City of Charlotte, 848 S.E.2d 1, 12 (N.C. Ct. App. 2020)).

To sufficiently allege corruption that pierces public official immunity,[3] a plaintiff must plead facts to support that a public official "acted for his own benefit." Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022). "An act is corrupt when it is done with 'a wrongful design to acquire some pecuniary profit or other advantage.'" Green v. Howell, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (quoting State v. Hair, 442 S.E.2d 163, 165 (N.C. Ct. App. 1994)). The Supreme Court of North Carolina has held "[t]he simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption." Grad, 321 S.E.2d at 891-92.

Here, Plaintiff bases his defamation claim against Defendant Yoder on these factual allegations:

> Chief Yoder made statements published or expressed to third parties that were not true, knowing they were not true, or with a reckless disregard for their truth, including:
> a. Claiming that the Plaintiff was faking his injuries;
> b. Claiming Plaintiff was responsible for other employees leaving;
> c. Claiming that Plaintiff was involved with assisting other employees with their litigation and complaints against the department.

---

[3] Plaintiff does not dispute that Defendant Yoder is a public official within the public immunity analysis. (Doc. No. 12 at 10-11). Plaintiff's brief is primarily devoted to the malice standard. Id.

(Compl. ¶ 59). Plaintiff alleges that these statements damaged his reputation for honesty and fair dealing, damaged him economically, subjected him to ridicule, contempt or disgrace in the community, damaged his reputation, and impeached him in his trade, business or profession. Id. ¶¶ 60-62. Plaintiff's Complaint is devoid of any allegations that support Defendant Yoder was acting with malice, corruptly, or acting outside the scope of his employment. In fact, the words "malice," "corrupt," or "outside the scope of employment" do not appear in the Complaint. Even setting aside the lack of these words, the undersigned also has closely reviewed the Complaint has found no sufficient factual allegations that would support piercing public official immunity. Norton v. Tabron, No. 7:16-CV-56-BO, 2016 WL 5867045, at *3 (E.D.N.C. Oct. 6, 2016), aff'd, 727 F. App'x 762 (4th Cir. 2018) (finding defendants were entitled to public official immunity on state law claims for defamation, among other things, where Plaintiff's allegations that defendants acted with malice or corruption were conclusory and unsupported); Bernstein v. Sims, No. 5:22-CV-277-BO, 2023 WL 2763108, at *3 (E.D.N.C. Apr. 3, 2023) (dismissing plaintiff's tort claim for defamation, among other things, because plaintiff only made a conclusory statement that defendant acted outside the scope of his authority).[4]

For those reasons, the undersigned respectfully recommends that Defendants' Motion be granted as to Plaintiff's defamation claim.

### E. FMLA Claim

As relevant here, the FMLA grants employees of covered employers the right to take up "to a total of 12 workweeks of leave during any 12–month period" when, inter alia, an employee

---

[4] There is some split of authority in North Carolina courts as to whether public official immunity is available in certain intentional torts. See Maney v. Fealy, 69 F. Supp. 3d 553, 564 (M.D.N.C. 2014), aff'd sub nom. Maney v. Garrison, 681 F. App'x 210 (4th Cir. 2017) (collecting cases related to public immunity and intentional torts, but still finding that public official immunity was available to the intentional tort of battery). However, considering the Fourth Circuit affirmed the decisions in both Maney and Norton, the undersigned concludes dismissal of the defamation claim is appropriate.

is burdened with "a serious health condition that makes the employee unable to perform." Stevenson v. Parker Offshore, LLC, No. 4:21-CV-70-FL, 2023 WL 2904691, at *6 (E.D.N.C. Mar. 27, 2023) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA also makes it "unlawful for any employer to interfere with, restrain, or deny" an employee's right to take that leave. Id. (quoting 29 U.S.C. § 2615(a)(1)). Similarly, an employer cannot retaliate against an employee for exercising FMLA rights. 29 U.S.C. § 2615(a)(2) (stating that an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter"). The first prohibition gives rise to "interference or entitlement claims." Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 186 (4th Cir. 2017) (internal quotations omitted). The second prohibits retaliation or discrimination for opposing unlawful practices. See id.

Whether his FMLA claim is presented as an interference or retaliation claim, Plaintiff must plead that he is an "eligible employee" of a "covered employer"[5] under the FMLA. Adams v. Buckeye Fire Equip. Co., No. 3:19-CV-422-MOC-DSC, 2021 WL 1063796, at *3 (W.D.N.C. Mar. 18, 2021) (citing Jacobs v. UPS, Inc., No. 3:15CV381-GCM, 2016 WL 8192993, at *2 (W.D.N.C. Dec. 5, 2016)) ("[A] required element for both an interference claim and a retaliation claim is that the plaintiff be an eligible employee under the FMLA.").

In his Complaint, Plaintiff generally alleges that "Defendants" generally are an "employer" with the meaning of the ADEA and the ADA (Compl. ¶ 2) and later more specifically alleges that "[f]rom 1999 to June 23, 2022, Plaintiff was employed with the City Fire Department." Id. ¶ 9.

---

[5] Under the FMLA, a covered employer "is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." Bryant v. Motorsports of Durham, LLC, No. 1:20CV1101, 2021 WL 2662200, at *9 (M.D.N.C. June 29, 2021) (quoting 29 C.F.R. § 825.104(a)), report and recommendation adopted, No. 1:20CV1101, 2021 WL 4255108 (M.D.N.C. Sept. 17, 2021). Nowhere does Plaintiff allege that any Defendant employed 50 or more employees. (Compl. ¶ 2 (in support of ADEA claims, alleging "Defendants" employed 20 employees)).

13

Later in allegations listed under his FMLA claim, Plaintiff again alleges that he "is informed and believes, and on that basis alleges, that Defendant City *Fire Department* qualifies as an 'employer' as that term is defined in the FMLA . . . ." Id. ¶ 25 (emphasis added). As discussed above, however, the City Fire Department is not a "person" subject to suit, and Plaintiff has stipulated to that entity's dismissal. (Doc. No. 12 at 3-4); Moore, 290 F. Supp.2d at 673 (dismissing Asheville Police Department because it "is not a 'person' and, therefore, lacks the capacity to be sued"); Atkins, 296 F. Supp. at 1071 (recognizing that "the City of Charlotte is a municipal corporation which operates and maintains the Charlotte Fire Department . . . [t]he Chief of the Department is appointed by the City Council and is accountable to the Council"). Plaintiff appears to acknowledge in his brief in opposition that the City of Newton, and not the City Fire Department was Plaintiff's employer. (Doc. No. 12 at 3-4). While Plaintiff generally alleged "Defendants" were his employer in a separate section of the Complaint, Plaintiff still has made no allegation that the City of Newton "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).[6]

Accordingly, Plaintiff has failed to plead his FMLA claim, and the undersigned respectfully recommends Defendants' Motion be granted to that claim.

**F. ADEA Wrongful Discharge and Disparate Treatment Claims**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation,

---

[6] Under the FMLA, a covered employer "is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." Bryant v. Motorsports of Durham, LLC, No. 1:20CV1101, 2021 WL 2662200, at *9 (M.D.N.C. June 29, 2021) (quoting 29 C.F.R. § 825.104(a)), report and recommendation adopted, No. 1:20CV1101, 2021 WL 4255108 (M.D.N.C. Sept. 17, 2021). As noted, nowhere does Plaintiff allege that any Defendant employed 50 or more employees, but Plaintiff in support of his ADEA claims alleges "Defendants" employed 20 or more employees. (Compl. ¶ 2).

terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

To establish a prima facie claim of wrongful discharge under the ADEA, a plaintiff must plead facts that support: (1) he was at least 40 years-old, (2) an adverse employment action by the employer, (3) satisfactory job performance at the time of the adverse employment action, and (4) that he was replaced by "a substantially younger individual with comparable qualifications." Bryant v. Mayor of Balt., No. CV MJM-21-0545, 2023 WL 6307823, at *19 (D. Md. Sept. 28, 2023) (quoting Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019)).

The prima facie case for ADEA disparate treatment is similar: a plaintiff must plead facts that support: (1) his age was at least 40 years; (2) he was meeting his employer's legitimate expectations at the time of the adverse employment action; (3) the employer took adverse employment action against him; and (4) the employer took that adverse employment action under circumstances giving rise to an inference of age discrimination. Gilliam v. Bertie Cnty. Bd. of Educ., No. 2:20-CV-16-D, 2022 WL 843090, at *4 (E.D.N.C. Mar. 21, 2022) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996)); see also Amis v. Pekoske, No. 320CV00541-FDW-DCK, 2021 WL 783543, at *3 (W.D.N.C. Mar. 1, 2021) ("Age must be the 'but-for' cause of the employer's action for the action to violate the ADEA." (quoting Buchhagen v. ICF Intern., Inc., 545 F. App'x 217, 220 (4th Cir. 2013)), aff'd sub nom., No. 21-1544, 2022 WL 1090252 (4th Cir. Apr. 12, 2022).

The Court's rationale in Amis is instructive. The Honorable Frank D. Whitney reasoned:

Plaintiff alleges he was 'treated differently and subjected to disparate treatment in comparison to younger employees.' (Doc. No. 1, p. 9). However, he points only to Ms. Gallagher's selection for the [disputed] position as potential evidence of Defendant's unlawful age discrimination. There are no other factual allegations to support an inference that Plaintiff was discriminated against because of his age; the Complaint simply states legal conclusions and provides a formulaic recitation of

the elements necessary to state an ADEA claim. That Defendant ultimately selected an employee ten (10) years younger than Plaintiff for the TSAR position is simply not sufficient, without more, to state a plausible claim for relief under the ADEA.

Amis, 2021 WL 783543, at *4. Other than alleging that he was 50 years old at the time of the events at issue here (Compl. ¶ 3), Plaintiff's Complaint lacks any age-specific allegations. Most notably here, Plaintiff does not even allege that he was replaced by or treated differently than even a single younger employee. Nor has he alleged any age-related animus. For those reasons, whether considered as wrongful discharge or disparate treatment, Plaintiff's ADEA claims fail, other than retaliation, which Defendant expressly is not seeking to dismiss. (Doc. No. 9 at 1; Doc. No. 10 at 18 ("Defendants are not seeking to dismiss Plaintiff's Retaliation claim in violation of REDA and the ADEA")). The undersigned respectfully recommends that Defendants' Motion be granted except as to Plaintiff's retaliation claims in violation of ADEA.

### G. ADA Claims

#### 1. Failure to Accommodate

For a failure to accommodate claim under the ADA, a plaintiff must allege "(1) that []he had a disability within the statutory meaning; (2) that the employer knew of [his] disability; (3) that a reasonable accommodation would permit [him] to perform the essential functions of the position; and (4) that the employer refused to make the accommodation." Scherck v. Johns Hopkins Univ. Applied Physics Lab'y LLC, No. CV ADC-23-1605, 2023 WL 6311469, at *6 (D. Md. Sept. 28, 2023) (quoting Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 959 (4th Cir. 2021)).

16

In support of his failure to accommodate claim, Plaintiff has pled that Defendant was the "employer" or Plaintiff within the meaning of the ADA (Compl. ¶ 2); that he had a disability,[7] that is, a back injury suffered in March 2022 (Id. ¶¶ 37-38) of which Defendants were aware and "failed to provide a reasonable accommodation by requiring him to attend the OSFM NC Breathing Equipment School Class." Id. ¶ 39. However, Plaintiff has not pled how the reasonable accommodation would permit him to perform the essential functions of the position.

For this reason, Plaintiff has failed to plead his ADA claim and the undersigned respectfully recommends Defendants' Motion be granted to that claim.

### 2. Hostile Work Environment

"[A]n ADA plaintiff must [show] the following to establish a hostile work environment claim: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." Rodriguez v. Wells Fargo Bank, N.A., No. 3:21-CV-248-MOC, 2023 WL 5493593, at *5 (W.D.N.C. Aug. 24, 2023) (quoting Fox v. Gen. Motors Corp., 47 F.3d 169, 177 (4th Cir. 2001)).

The severe and pervasive element of a prima facie case is a high bar. Id. (citing E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008)). To meet this element, "[t]here must be . . . something more than 'rude treatment by coworkers, callous behavior by one's supervisors, or a routine difference of opinion and personality conflict with one's supervisor.'" Id. (quoting

---

[7] The ADA defines "disability" in regard to an individual as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C).

17

Tate v. Auto Truck Transport USA, LLC., Doc. No. 3:17-cv-00296-RJC-DSC, 2018 WL 3873600 (W.D.N.C. Aug 15, 2018) (quoting Sunbelt Rentals, Inc., 521 F.3d at 315)).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and create an abusive working environment based on a protected characteristic, the court examines the allegations both subjectively and objectively. Ali v. WorldWide Language Res., LLC, No. 5:20-CV-638-D, 2023 WL 5120224, at *8 (E.D.N.C. Aug. 9, 2023) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993)). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. Id. (citing Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71, (2001) (per curiam) and Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)). Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. Id. (citing Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; and Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82, (1998)).

The objective component helps courts "to police the baseline for hostile environment claims." Id. (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc)). The court considers all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Forklift Sys., Inc., 510 U.S. at 23). "Common sense, and an appropriate sensitivity to social context" will enable courts to distinguish between teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive treatment and "conduct which a reasonable person

in the plaintiff's position would find severely hostile or abusive" based on a protected characteristic.  Id. (quoting Oncale, 523 U.S. at 82).

In assessing the severity of the harassing conduct, the status of the harasser is an important factor.  Id. at *9 (citing Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 278 (4th Cir. 2015)); Sonnier v. Diamond Healthcare Corp., 114 F. Supp. 3d 349, 356 (E.D. Va. 2015).  A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Id. (quoting Boyer-Liberto, 786 F.3d at 278).

Applying these legal principles to the factual allegations taken as true, Plaintiff has failed to state a cause of action for ADA hostile work environment.  Plaintiff alleges that his work environment became hostile when Defendant Yoder "ridicule[ed] him, claiming his injuries were fake, falsely w[rote] him up once [Plaintiff] complained about the limitations of his disability on his work requirements, forcing his to resign as a result of the hostile and retaliatory environment." (Compl. ¶ 39).  Plaintiff has not cited any authority that a supervisor's ridicule and disbelief of Plaintiff's claims of disability, even if accompanied by false disciplinary write-ups, can amount to a hostile work environment.  In fact, in another recent case, a court concluded that a false reprimand, even when upheld through an administrative process, was not sufficient to create a hostile work environment.  See Broadway v. Univ. of Maryland, Glob. Campus, No. CV GLS 21-3226, 2023 WL 4421406, at *9 (D. Md. July 7, 2023).  Even assuming arguendo that these conditions were abusive in Plaintiff's subjective view, they do not amount to "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Ali, 2023 WL 5120224, at *8 (quoting Oncale, 523 U.S. at 82).  Rather, they are in the variety of "teasing, distasteful jokes, sporadic rude language, vulgarity, stupidity, offhand comments, and insensitive

treatment," which while inappropriate, do not amount to sufficiently severe or pervasive to support a hostile work environment claim. Id.

Therefore, because he has failed to plead that Defendants' treatment of him was so sufficiently severe or pervasive to alter a term, condition, or privilege of employment, Plaintiff's ADA hostile work environment claim fails. The undersigned respectfully recommends that Defendants' Motion be granted as to that claim.

## H. North Carolina Public Policy Wrongful Discharge Claim

Plaintiff contends that he was wrongfully discharged in violation of North Carolina public policy in violation of N.C. Gen. Stat. § 143-422.2. (Compl. ¶ 48).

"North Carolina generally adheres to the employment at-will doctrine, meaning that an employee without a definite term of employment may be discharged for any reason and has no claim for wrongful discharge against his employer." Carter v. Sizzling Platter, LLC, No. 3:23CV117-GCM, 2023 WL 4604589, at *2 (W.D.N.C. July 18, 2023) (quoting Baucom v. Cabarrus Eye Ctr., P.A., No. 1:06CV00209, 2007 WL 1074663, at *6 (M.D.N.C. Apr. 4, 2007)). The employment-at-will doctrine, however, is subject to a public policy exception that provides that an employer cannot terminate an employee-at-will for a reason which is in violation of the public policy of North Carolina. Id. (citing Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 168 (N.C. 1992) and Coman, 381 S.E.2d at 447).

Plaintiff's public policy claim here fails, however, because he was not terminated.[8] Rather, his decision to resign could be couched only as a constructive discharge or otherwise a product of retaliation. "[T]he North Carolina Supreme Court has not recognized a claim for constructive discharge or retaliation under N.C. Gen. Stat. § 143-422.2." Gelin v. N-Able Techs., Inc., No.

---

[8] Plaintiff's Complaint alleges Defendants' conduct led to a "forced resignation." (Compl. ¶¶ 28, 55).

5:22-CV-345-FL, 2023 WL 3079420, at *5 (E.D.N.C. Apr. 25, 2023). "North Carolina courts and federal courts applying North Carolina law have . . . repeatedly [found] that no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy." Id. (quoting Jones v. Duke Energy Corp., 43 Fed. App'x 599, 600 (4th Cir. 2002) and Creech v. City of Wilson, No. 5:19-CV-70-FL, 2019 WL 3720744, at *2 (E.D.N.C. Aug. 7, 2019)). For this reason, the undersigned respectfully recommends that Defendants' Motion for Judgment on the Pleadings be granted as to Plaintiff's public policy wrongful discharge claim.

## I. **Punitive Damages**

Plaintiff has asserted punitive damages as a separate cause of action. (Compl. ¶¶ 65-69). "It is well-established [however] that claims for equitable relief and punitive damages are not separate causes of action, but rather constitute requests for relief." Baldwin v. Duke Energy Corp., No. 3:12CV212-MOC-DSC, 2012 WL 3564021, at *4 (W.D.N.C. July 13, 2012) (citing Haylash v. Volvo Trucks N.A., Inc., 1998 U.S. Dist. LEXIS 12511 at *8-9 (M.D.N.C. April 10, 1998)) (dismissing causes of action for punitive damages and equitable relief), report and recommendation adopted, No. 3:12CV212, 2012 WL 3562402 (W.D.N.C. Aug. 17, 2012).

In Baldwin, the complaint "include[d] claims for federal and state violations as well as a separate cause of action for equitable relief and punitive damages." 2012 WL 3564021, at *4. In Haylash, the plaintiff asserted ADA violations as well as separate causes of action for punitive damages and equitable relief. 1998 U.S. Dist. LEXIS 12511 at *9. The court dismissed plaintiff's punitive damages and equitable relief claims, holding instead that it would consider punitive damages and equitable relief as part of the plaintiff's prayer for judgment in connection with his surviving ADA claim. Id.

21

In <u>Baldwin</u>, the Magistrate Judge also recognized that this Court has held that in the context of a complaint alleging Title VII violations, punitive damages are not an independent cause of action and must be preceded by Title VII or compensatory damages liability. 2012 WL 3564021, at *4 (citing <u>Parker v. D.R. Kincaid Chair Co., Inc.</u>, No. 5:10CV97-V, 2011 U.S. Dist. LEXIS 85061, at *26 (W.D.N.C. Aug. 2, 2011)). In <u>Parker</u>, the Court explained that "[t]o recover an award of punitive damages in a Title VII claim, a plaintiff must demonstrate that the defendant engaged in aggravated conduct, and prove that defendant 'engaged' in a discriminatory practice . . . with malice or reckless indifference to [plaintiff's] federally protected rights." 2011 U.S. Dist. LEXIS 85061, at *26-27 (citations omitted). "The terms 'malice' and 'reckless indifference' refer to the employer's knowledge that it may be acting in violation of federal law." <u>Id.</u> at *27 (citations omitted); <u>see also</u> <u>Shupe v. Hagaman</u>, No. 521CV00070-KDB-DSC, 2021 WL 5858591, at *7 (W.D.N.C. Oct. 28, 2021) ("Count 5 is a claim for punitive damages. This is not an independent cause of action," recommending dismissal of punitive damages cause of action), <u>report and recommendation adopted sub nom.</u>, <u>Mason v. Watauga Cnty.</u>, No. 521CV00070-KDB-DSC, 2021 WL 5855661 (W.D.N.C. Dec. 9, 2021).

Finally, punitive damages are not generally available in actions against a governmental entity or its employees in their official capacities absent specific statutory authority. <u>Tompkins v. Charlotte-Mecklenburg Sch. Sys.</u>, No. 3:16-CV-152-RJC-DSC, 2016 WL 5868086, at *3 (W.D.N.C. Oct. 6, 2016) (citing <u>Jackson v. Hous. Auth. of City of High Point</u>, 341 S.E.2d 523 (N.C. 1986)), <u>report and recommendation adopted</u>, No. 3:16-CV-152-RJC-DSC, 2016 WL 6780339 (W.D.N.C. Nov. 15, 2016).

For those reasons the undersigned respectfully recommends that Defendants' Motion for Judgment on the Pleadings be <u>granted</u> to the extent Plaintiff has pled punitive damages as a

separate cause of action.  Noting certain limitations as outlined above, the Court could later consider punitive damages, if at all appropriate, as part of Plaintiff's prayer for relief.

### III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion for Judgment on the Pleadings" (Doc. No. 9) be **GRANTED**.  Specifically, the undersigned recommends that:

1. The Complaint be **DISMISSED WITH PREJUDICE** in its entirety against Defendant City of Newton Fire Department and Defendant Kevin Yoder in his official capacity;

2. The FMLA, ADEA (other than retaliation), ADA, NCWHA, and North Carolina public policy wrongful discharge claims against Defendant City be **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff's ADEA, ADA, FMLA, REDA, defamation, and North Carolina public policy claims pled against Defendant Yoder in his individual capacity be **DISMISSED**;

4. Plaintiff's separate cause of action for punitive damages be **DISMISSED** and should Plaintiff prevail on a claim giving rise to the recovery of punitive damages, the Court may consider punitive damages, if appropriate and permitted, as part of Plaintiff's prayer for relief; and

5. Plaintiff's claims against Defendant City for retaliation in violation of the AEDA and REDA proceed.

## IV.     TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED.**

Signed: November 22, 2023

Susan C. Rodriguez
United States Magistrate Judge

24